# United States Court of Appeals for the Federal Circuit

2008-1077

ICU MEDICAL, INC.,

Plaintiff-Appellant,

v.

ALARIS MEDICAL SYSTEMS, INC.,

Defendant-Appellee.

Frank E. Scherkenbach, Fish & Richardson P.C., of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief were Robert E. Hillman, and Jennifer K. Bush, and Craig E. Countryman, Fish & Richardson P.C., of San Diego, California.

Timothy J. Malloy, McAndrews, Held & Malloy, Ltd., of Chicago, Illinois, argued for defendant-appellee. With him on the brief were David D. Headrick, Scott P. McBride and Wilhelm L. Rao.

Appealed from: United States District Court for the Central District of California

Senior Judge Mariana R. Pfaelzer

# United States Court of Appeals for the Federal Circuit

2008-1077

ICU MEDICAL, INC.,

Plaintiff-Appellant,

v.

ALARIS MEDICAL SYSTEMS, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Central District of California in case no. 04-CV-0689, Senior Judge Mariana R. Pfaelzer.

_____

DECIDED: March 13, 2009

_____

Before MICHEL, Chief Judge, PROST, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

ICU Medical, Inc. (ICU) appeals from various orders by the U.S. District Court for the Central District of California granting partial summary judgment of noninfringement, summary judgment of invalidity, and attorney fees and Rule 11 sanctions—all in favor of Alaris Medical Systems, Inc. (Alaris). ICU sued Alaris for infringement of four U.S. patents related to valves used in medical intravenous (IV) setups. The district court accepted Alaris's proposed construction of the term "spike," requiring pointed and piercing features, and granted partial summary judgment of noninfringement accordingly. The district court also granted summary judgment of invalidity under 35 U.S.C. § 112, ¶ 1 with respect to so-called "spikeless" and "tube" claims. Lastly, the district court awarded attorney fees and Rule 11 sanctions. For the reasons set forth below, we affirm.

BACKGROUND

The technology in this case concerns medical valves used in the transmission of fluids to or from a medical patient, such as when using an IV. Prior techniques involved the insertion of an external needle into a side port that connected to the main IV line. The problems associated with this practice included unintended detachment of the needle, accidental needle sticks by medical personnel, and breaking off of pieces into the line upon insertion of the needle. Subsequent products offered alternatives to traditional needle ports, but these new products came with their own problems, including complex internal parts with increased risk of malfunction, dead space within the valve that made it difficult to deliver a precise volume of fluid, and the inability to support fluid flow in two directions. ICU attempted to overcome these problems by inventing a medical valve that receives fluid from a medical implement (e.g., a syringe) without the use of an external needle. The medical implement compresses a seal on the valve to create a fluid pathway from the medical implement through the valve and into a patient's IV line.

ICU sued Alaris for patent infringement in June 2004, asserting only U.S. Patent No. 6,682,509 (the '509 patent) and its "spikeless claims" discussed below. ICU then filed an ex parte application for a temporary restraining order (TRO), which the district court denied. The district court explained that Alaris presented substantial questions of invalidity for the asserted spikeless claims of the '509 patent. ICU then amended its complaint to assert claims from three other patents: U.S. Patent Nos. 5,685,866; 5,873,862; and 6,572,592 (the '866, '862, and '592 patents, respectively).

The asserted claims fall into three groups: the spike claims,[1] the spikeless (or spike-optional) claims,[2] and the tube claims.[3]  Claims 9–12 of the '592 patent are representative of the asserted spike claims, for which an embodiment is depicted below.



FIG. 4          FIG. 5

Dependent claims 10–12 further limit the claimed body, spike, and seal, respectively. The parties dispute whether the spike element must be pointed and whether the spike must be shaped such that it can pierce the seal for fluid to be transmitted through the

---

[1]     The asserted spike claims include claims 11, 12, and 16 of the '592 patent; claims 1, 3, 4, 6, and 7 of the '866 patent; and claims 1 and 2 of the '862 patent.

[2]     The asserted spikeless claims include claims 31–36, 38, and 40–42 of the '592 patent and claims 11–13, 15, and 16 of the '509 patent.

[3]     The asserted tube claims include claims 17–26, 37, 39, and 46 of the '592 patent and claim 14 of the '509 patent.

valve. Claim 35 of the '592 patent is representative of the spikeless claims; it claims a needleless connector valve comprising a body and a seal. '592 patent col.18 ll.40–63. Claim 17 of the '592 patent is representative of the tube claims. Id. col.16 l.57–col.17 l.16.

After a series of detailed orders and findings, the district court granted summary judgment of noninfringement of the asserted spike claims; summary judgment of invalidity of the spikeless and tube claims for failure to satisfy the written description requirement; and attorney fees and Rule 11 sanctions. ICU appeals all three judgments, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I

We first consider the district court's grant of summary judgment of noninfringement of the asserted spike claims, which we review de novo. Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd., 476 F.3d 1321, 1326 (Fed. Cir. 2007). Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The district court's order, and ICU's challenge, is premised on the district court's construction of the term "spike." We review determinations of claim construction de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1455–56 (Fed. Cir. 1998) (en banc).

We have consistently explained that claim terms should generally be given their ordinary and customary meaning and that such meaning is one "that the term would

have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Moreover, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. at 1313. This last tenet derives from the fact that claims do not stand alone but rather "are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims." Id. at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc)). "The close kinship between the written description and the claims is enforced by the statutory requirement that the specification describe the claimed invention in 'full, clear, concise, and exact terms.'" Id. at 1316 (quoting 35 U.S.C. § 112, ¶ 1). Thus not only is the written description helpful in construing claim terms, but it is also appropriate "to rely heavily on the written description for guidance as to the meaning of the claims." Id. at 1317. With these principles in mind, we turn to the appropriate construction of the disputed spike term.

The district court construed spike to mean "an elongated structure having a pointed tip for piercing the seal, which tip may be sharp or slightly rounded." In doing so, the district court adopted Alaris's proposed construction and rejected ICU's broader proposal of "an upward projection." We agree with the district court's construction.

Independent claim 9 recites:

9. A valve, comprising:

a body having a cavity therein;

a spike located within said cavity in said body; and

>  a <u>seal located on said spike</u>, said seal comprising a series of O-ring
>    elements.

'592 patent col.16 ll.19–24 (emphasis added).

As the district court correctly noted, the specification "repeatedly and uniformly describes the spike as a pointed instrument for the purpose of piercing a seal inside the valve." For example:

>  "A two-way valve . . . includes a seal which, upon being compressed by the medical implement, is pierced to open the valve and reseals upon being decompressed . . . ." <u>Id.</u> col.1 ll.23–26 (background of the invention).

>  "A two-way valve is employed utilizing a reusable seal that may be repeatedly pierced by an enclosed, protected, non-metallic spike rather than an exposed metal needle." <u>Id.</u> col.2 ll.45–48 (summary of the invention).

>  "The spike need only be strong enough to penetrate the seal cap, or if necessary, to pierce a connecting septum." <u>Id.</u> col.10 ll.20–22.

>  "The delivery end or nose of the medical implement is inserted into the valve as depicted in FIG. 8, pushing the nose against the seal to compress the seal sufficiently to allow the tip of the spike to pierce the seal and enter said delivery end." <u>Id.</u> col.15 ll.4–8 (operation).

It is true that we should not import limitations from the specification into the claims. <u>Phillips</u>, 415 F.3d at 1320, 1323. But "the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." <u>Id.</u> at 1323. Indeed, the court should focus on how such a person would understand the claim term "after reading the entire patent." <u>See id.</u> at 1321. The specification never suggests that the spike can be anything other than pointed. As the district court noted, (1) each figure depicts the spike as elongated and pointed; (2) in each figure depicting an activated valve, the spike pierces the seal; and

(3) the patents neither describe piercing as optional nor describe any non-piercing item as a spike.[4] Moreover, ICU offers no support from any intrinsic or extrinsic source in support of its claim that the ordinary meaning of spike would include a non-pointed structure such as a tube or a straw.

ICU argues that the specification's disclosure of a spike with a hole at the tip precludes a construction that requires a pointed spike because a spike with a hole at the tip, according to ICU, would not then be pointed. The district court rejected this argument because (1) the construction it accepted "allow[s] for the possibility of a hole at the tip of the spike" and (2) "spikes featuring an angled tip allowing for a hole at the end while still having an acute tip were well-known at the time the original patents were filed in the early 1990's." The district court is correct that a spike with a pointed tip could have a hole at the tip of the spike. A needle, for example, can both be pointed and have a hole at its tip. In the context of prior art, the specification even refers to "through-holes placed at the tip of [a] needle." '592 patent col.2 ll.3–4.

ICU further argues that we should not import the functional limitation of piercing where that function is not recited in the claim. We have explained, however, that it is "entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language." Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005). In Medrad, we construed the term "substantially uniform" and explained that it does not suggest "how much a magnetic field may deviate from absolute uniformity before it is no longer uniform." Id. Similarly in this case, the term

---

[4] To the extent ICU argues that the '447 patent discloses a preslit trampoline seal that could possibly work without a spike (or with a nonpointed structure), every embodiment in the specification including the preslit trampoline seal uses a spike to pierce the seal.

spike does not suggest the degree to which the spike must be pointed. Thus adding the functional language of "for piercing the seal" is appropriate because it defines the degree to which the spike must be pointed.

Lastly, ICU puts forth a claim differentiation theory based on dependent claim 13, which states:

> <u>wherein said end of said spike is pointed</u> so that it can pierce said seal and enter into a portion of said medical implement when said medical implement is connected to said valve.

'592 patent col.16 ll.44–47 (emphasis added). ICU contends that the presence of claim 13 precludes a construction of spike that requires "a pointed tip for piercing the seal," lest claim 13 be rendered superfluous. The district court rejected this argument and noted that "claim 13 was only added to the '592 patent in 2001, years after the filing date of the original patents, the issuance of the '866 and '862 patents, and the introduction of the allegedly infringing Alaris products."

Although claim differentiation counsels against construing the spike term to require the pointed/piercing features of claim 13, this doctrine is not a rigid rule but rather is one of several claim construction tools. <u>See</u> <u>Nomos Corp. v. Brainlab USA, Inc.</u>, 357 F.3d 1364, 1368 (Fed. Cir. 2004); <u>Laitram Corp. v. Rexnord, Inc.</u>, 939 F.2d 1533, 1538 (Fed. Cir. 1991) (quoting <u>Autogiro Co. of Am. v. United States</u>, 384 F.2d 391, 404 (Ct. Cl. 1967) ("Claim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated.")). We agree with the district court.

In sum, the district court correctly construed spike as "an elongated structure having a pointed tip for piercing the seal, which tip may be sharp or slightly rounded." Because we agree with the district court's construction of spike, we <u>affirm</u> the district

court's grant of summary judgment of noninfringement with respect to the asserted spike claims.

II

The district court also granted summary judgment in favor of Alaris holding that the asserted spikeless and tube claims of the '509 and '592 patents are invalid for lack of written description under 35 U.S.C. § 112, ¶ 1. Compliance with the written description requirement is a question of fact. See Falko-Gunter Falkner v. Inglis, 448 F.3d 1357, 1363 (Fed. Cir. 2006). Nevertheless, we review de novo the district court's grant of summary judgment of invalidity for lack of written description. Because patents are presumed valid under 35 U.S.C. § 282, Alaris must demonstrate by clear and convincing evidence that the '509 and '592 patents are invalid. E.g., WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1355 (Fed. Cir. 1999).

"[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" Univ. of Rochester v. G.D. Searle & Co., 358 F.3d 916, 920 (Fed. Cir. 2004) (quoting Reiffin v. Microsoft Corp., 214 F.3d 1342, 1345 (Fed. Cir. 2000)). This requirement protects the quid pro quo between inventors and the public, whereby the public receives "meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time." Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 970 (Fed. Cir. 2002). To satisfy the written description requirement, a patent applicant must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention. The invention is, for purposes of

the 'written description' inquiry, <u>whatever is now claimed</u>." <u>Vas-Cath Inc. v. Mahurkar</u>, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991). Such description need not recite the claimed invention in haec verba but must do more than merely disclose that which would render the claimed invention obvious. <u>Univ. of Rochester</u>, 358 F.3d at 923; <u>Regents of the Univ. of Cal. v. Eli Lilly & Co.</u>, 119 F.3d 1559, 1566–67 (Fed. Cir. 1997); <u>see also</u> <u>PowerOasis, Inc. v. T-Mobile USA, Inc.</u>, 522 F.3d 1299, 1306–07 (Fed. Cir. 2008) (explaining that § 112, ¶ 1 "requires that the written description actually or inherently disclose the claim element").

A

Claim 35 of the '592 patent, which is representative of the asserted spikeless claims, recites a needleless connector valve comprising a body and a seal; it does not recite any spike limitation. '592 patent col.18 ll.40–63. Both the '592 and '509 patents originate from U.S. Patent Application No. 07/813,073, filed on December 18, 1991 and now abandoned. ICU filed a continuation-in-part application in 1992, to which both patents claim priority. ICU then eventually filed an amendment to include spikeless claims in November 2001, leaving the specification unchanged. Hence, the asserted spikeless claims were not filed with the original application; rather they were added years later during prosecution.

Alaris challenges the validity of the asserted spikeless claims on the basis that they lack written description in the specification. Alaris argues that the specification clearly limited ICU's invention to valves with a spike and does not demonstrate that the inventor possessed a medical valve without a spike. ICU argues that these claims are spike-optional—i.e., because the claims contain no spike element, they cover valves

with a spike and valves without a spike. According to ICU, the specification's disclosure of valves with a spike support claims that are neutral regarding whether the valve must include a spike. ICU further maintains that the specification's disclosure of a preslit seal demonstrates possession of an invention that was not dependent on a spike element.

The district court correctly granted summary judgment of invalidity with respect to the spikeless claims. As an initial matter, we refer to these claims as spikeless not because they exclude the preferred embodiment of a valve with a spike but rather because these claims do not include a spike limitation—i.e., they do not require a spike. We addressed a similar issue in LizardTech, Inc. v. Earth Resource Mapping, Inc., 424 F.3d 1336 (Fed. Cir. 2005), where a patent specification described a method of digital image compression. Id. at 1337–39. More specifically, the specification disclosed a method for creating a seamless discrete wavelet transform (DWT), whereby the image is divided into smaller tiles for calculation purposes and DWT is applied to each tile individually. The disclosed method produces a seamless DWT because the output is essentially equivalent to the output that would result if DWT had been applied to the entire image. Id. at 1339. Claim 1 in LizardTech recited "[a] method for selectively viewing areas of an image at multiple resolutions in a computer," comprising a variety of steps of which one step was "maintaining updated sums of said DWT coefficients from said discrete tile image . . . to form a seamless DWT of said image." Id. at 1340. Claim 21 recited the identical method, except that it did not contain two limitations, one of which was the "maintaining updated sums" limitation. Id. at 1343. We explained that "the specification provides only one method for creating a seamless DWT, which is to 'maintain updated sums' of DWT coefficients. That is the procedure recited by claim 1.

Yet claim 21 is broader than claim 1 because it lacks the 'maintain updated sums' limitation." Id. at 1344 (concluding that "claim 21 refers to taking a seamless DWT generically"). We determined, however, that "[a]fter reading the patent, a person of skill in the art would not understand how to make a seamless DWT generically and would not understand LizardTech to have invented a method for making a seamless DWT, except by 'maintaining updat[ed] sums of DWT coefficients.'" Id. at 1345. We therefore concluded that claim 21 was invalid under the written description requirement of § 112, ¶ 1. Id. at 1347 (rejecting also LizardTech's argument that § 112 "requires only that each individual step in a claimed process be described adequately").

ICU's asserted spikeless claims are broader than its asserted spike claims because they do not include a spike limitation; these spikeless claims thus refer to medical valves generically—covering those valves that operate with a spike and those that operate without a spike. But the specification describes only medical valves with spikes. See supra Part I. We reject ICU's contention that the figures and descriptions that include spikes somehow demonstrate that the inventor possessed a medical valve that operated without a spike. Based on this disclosure, a person of skill in the art would not understand the inventor of the '509 and '592 patents to have invented a spikeless medical valve.

ICU contends that a person of ordinary skill in the art would recognize that the specification discloses a preslit (or precut) seal that would permit fluid transmission without the piercing of a spike. In this preslit trampoline seal embodiment, compression of the preslit seal by a medical implement opens the slit to create a fluid pathway and decompression of the seal upon removal of the medical implement closes the seal. The

specification describes the preslit seal as facilitating piercing and resealing, rather than as eliminating the need for piercing. '592 patent col.4 ll.8–11 ("The proximal end of the seal may be precut to form a tiny orifice therein that allows the tip of the spike to pass therethrough easily upon compression of the seal."); id. col.6 ll.52–57 ("In the embodiment shown in FIG. 13 . . . , this seal has a precut slit in its proximal end. This provides a tiny orifice through which the tip of the spike element may easily pass, yet still provides a fluid tight seal upon withdrawal of the spike element."); id. col.14 ll.14–23 ("Prior to use of [the] valve, it is preferable that the seal caps be pierced centrally by a steel needle in the axial direction, precutting the seal to provide the slit in order to allow for more rapid decompression and reformation of the seal upon piercing by the spike."). The fact that compression of a preslit seal would allow an opening for fluid transmission does not answer the question of whether the claimed invention nevertheless requires a spike capable of piercing the seal in preslit embodiments. It is not enough that it would have been obvious to a person of ordinary skill that a preslit trampoline seal could be used without a spike. See Eli Lilly, 119 F.3d at 1566–67 (explaining that "an applicant complies with the written description requirement by describing the invention, with all its claimed limitations, not that which makes it obvious" (internal quotation marks omitted)). ICU has failed to point to any disclosure in the patent specification that describes a spikeless valve with a preslit trampoline seal.

We affirm the district court's grant of summary judgment of invalidity with respect to the asserted spikeless claims under the written description requirement of § 112, ¶ 1.

B

As for the asserted tube claims, claim 17 of the '592 patent recites a needleless connector valve comprising a body and a resilient seal, as well as

> a tube seated in the distal end of said cavity for permitting fluid to flow through the distal end of said cavity, said tube sized such that a portion of said seal fits snugly around the distal end of said tube.

'592 patent col.16 l.57–col.17 l.16. ICU argues that spikes are a species of tubes and that the specification's disclosure of spikes with one or more holes at the tip support claims to the genus of tubes. Alaris responds that the specification discloses only tubes that are hollow, or cylindrical, and that have holes at both ends. Alaris explains that the specification discloses a tube as part of the valve body rather than as located within the seal or distal end of the body. In sum, Alaris explains that the specification draws a clear distinction between a spike and a tube.

We agree with Alaris that the specification distinguishes a tube from a spike, and ICU fails to identify any disclosure in the specification to support its species-genus argument. Thus we affirm the district court's grant of summary judgment of invalidity of the asserted tube claims under the written description requirement of § 112, ¶ 1.

III

A

We apply Federal Circuit law when reviewing an award of attorney fees under 35 U.S.C. § 285. Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1407 (Fed. Cir. 2004). "We review a district court's findings of fact for clear error, and the legal standard applied de novo." Id. at 1407. Attorney fees may be warranted for litigation misconduct or "if both (1) the litigation is brought in subjective bad faith, and (2) the

litigation is objectively baseless." <u>Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.</u>, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

The district court concluded that Alaris was the prevailing party because Alaris established noninfringement of ICU's spike claims and invalidity of ICU's spikeless claims. The district court then determined that this case was exceptional because ICU's TRO/PI request and the amended complaint's assertion of the spike claims were objectively baseless and brought in bad faith.

ICU argues that the district court should not have used ICU's proposed construction of the spike term as a basis for awarding attorney fees. ICU insists that even if we affirm the district court's construction, ICU's claim construction was not frivolous or objectively unreasonable, specifically emphasizing its claim differentiation argument. Alaris points out that the district court awarded attorney fees only for the portion of the case related to the spike claims. It then argues specifically that ICU has not shown clear factual or legal error.

We affirm the district court's award of attorney fees. The district court applied the appropriate legal standard and articulated several bases in support of the award, none of which ICU has shown to be clearly erroneous. <u>See</u> Order Granting in Part Defendant Alaris' Motion for Fees, Costs and Expenses Under 35 U.S.C. § 285 and Granting Defendant Alaris' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 at 3–5, 7–19, <u>ICU Medical, Inc. v. Alaris Medical Systems, Inc.</u>, No. 8:04cv689 (C.D. Cal. Apr. 16, 2007) (Dkt. No. 730) [hereinafter Fee and Sanction Order]. For example, the district court found that ICU made "multiple, repeated misrepresentations . . . to the Court regarding its own patents in an effort to conceal what are now characterized as errors in order to

rescue the TRO/PI from denial." Id. at 12. These misrepresentations related to (1) ICU's assertion of claims in the '509 patent that were identical to claims in the '592 patent (i.e., assertion of double-patented claims); (2) ICU's assertion of more double-patented claims from the '509 patent even after Alaris and the district court warned ICU of the double-patenting issue; (3) ICU's misrepresentation of Federal Circuit authority; (4) ICU's representation that figures 13 and 20–22 of the common specification "clearly" disclosed a spikeless embodiment, only to later acknowledge that these figures do not disclose such an embodiment and state that its representation was an "honest mistake." Id. at 8–12. The district court provided the following additional basis for its award of attorney fees:

> ICU admits that it did not originally sue on its '862 and '866 "spike" Patents, which issued several years earlier in 1997 and 1999, because of the "substantial difficulty" it would face in asserting the "spike" claims against Alaris' products, which were "spikeless."
>
> Furthermore, Alaris points to evidence showing that, prior to filing this case, ICU did not believe that the SmartSite Valves infringed its "spike" claims. This evidence includes statements by ICU's inventor and internal personnel separately indicating their views that the Alaris SmartSite Valve had no "spike" element and that the SmartSite Valve was an appreciably different device from any of ICU's valves.

Id. at 14. Apparently when ICU recorded the results of a preliminary investigation of Alaris's product, ICU stated that "there is no spike inside the device." J.A. 2109. Lastly, the district court noted that ICU's misconduct warranted Rule 11 sanctions, which can also form a basis for an award of attorney fees. Fee and Sanction Order at 15 (citing Brooks Furniture, 393 F.3d at 1381). Having determined that this case is exceptional, the district court appropriately exercised its discretion in awarding attorney fees only for that portion of the litigation "relating to: 1) the TRO/PI; 2) ICU's assertion of the 'spike' claims; and 3) ICU's construction of the term 'spike' at claim construction." Id. at 16.

According to the district court, "[i]n contrast to its objectively baseless and bad faith litigation of the TRO/PI and 'spike' claims, ICU's later unsuccessful litigation of the 'spikeless' claims involved tactics best characterized as overzealous or overly creative, as opposed to vexatious and frivolous." Id.

For the foregoing reasons, we affirm the district court's award of attorney fees in favor of Alaris.

B

Although we apply the law of the regional circuit, here the Ninth Circuit, when reviewing an award of Rule 11 sanctions, Power Mosfet, 378 F.3d at 1406–07, the Supreme Court has advised all appellate courts to "apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990). Further, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. Before awarding Rule 11 sanctions, "a district court must conduct a two-prong inquiry to determine (1) whether the complaint [or relevant document] is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997)).

The district court determined that ICU's "frivolous construction and assertion of the 'spike' claims in the amended complaint, concurrently justified sanctions under Rule 11." See Order Determining Attorney Fees and Costs Due to Alaris Pursuant to the Court's April 16, 2007 Fees Order at 8, ICU Medical, Inc. v. Alaris Medical Systems,

<u>Inc.</u>, No. 8:04cv689 (C.D. Cal. June 28, 2007) (Dkt. No. 788) [hereinafter Fee Determination Order]; <u>see also</u> Fee and Sanction Order at 19–26. Nevertheless, the district court awarded no monetary sanctions for the violations of Rule 11. Fee Determination Order at 9. Rather the district court acknowledged that the amount of its award of Rule 11 sanctions was "subsumed" by the amount of attorney fees awarded under § 285. <u>Id.</u> at 8. The district court also acknowledged that it "ha[d] sufficiently admonished ICU and its counsel for any improper conduct under Rule 11." <u>Id.</u> at 9.

ICU argues that because the district court's reasons for imposing sanctions under Rule 11 were the same as its reasons for awarding attorney fees under § 285, its arguments regarding attorney fees "applies equally" to its appeal of Rule 11 sanctions. Appellant's Br. 34. Because we have already rejected ICU's arguments with respect to attorney fees, we affirm the district court's award of Rule 11 sanctions.

## CONCLUSION

The district court correctly granted summary judgment of noninfringement with respect to the spike claims and summary judgment of invalidity with respect to the spikeless and tube claims. The district court did not commit clear error in awarding attorney fees, nor did the district court abuse its discretion in granting Rule 11 sanctions.

## <u>AFFIRMED</u>