# United States Court of Appeals for the Federal Circuit

—————————

**CROWN PACKAGING TECHNOLOGY, INC.**
AND **CROWN CORK & SEAL USA, INC.,**
*Plaintiffs–Appellants,*

v.

**BALL METAL BEVERAGE CONTAINER
CORPORATION,**
*Defendant–Appellee.*

—————————

2010-1020

—————————

Appeal from the United States District Court for the Southern District of Ohio in Case No. 05-CV-0281, Judge Walter H. Rice.

—————————

Decided: April 1, 2011

—————————

DALE M. HEIST, Woodcock Washburn LLP, of Philadelphia, Pennsylvania, argued for plaintiffs-appellants. With him on the brief were ALEKSANDER J. GORANIN and AARON B. RABINOWITZ.

JOHN D. LUKEN, Dinsmore & Shohl, LLP, of Cincinnati, Ohio, argued for defendant-appellee. With him on

the brief were JOSHUA A. LORENTZ and CHARLES H. BROWN, III.

———————————————

Before NEWMAN and DYK, *Circuit Judges*, and WHYTE, *District Judge.*[*]

Opinion for the court filed by *District Judge* WHYTE. Opinion concurring in part and dissenting in part filed by *Circuit Judge* DYK.

WHYTE, *District Judge*.

Crown Packaging Technology, Inc. and Crown Cork and Seal USA, Inc. (collectively "Crown") appeal from the judgment of the United States District Court for the Southern District of Ohio following its granting of Ball Metal Beverage Container Corp.'s ("Ball's") motion for summary judgment invalidating the asserted claims of U.S. Patent Nos. 6,935,826 ("the '826 patent") and 6,848,875 ("the '875 patent") for violating the written description requirement and because the asserted claims were anticipated. Because the '826 and '875 patents' common specification conveys to one of ordinary skill in the art that the patentee was in possession of the subject matter of the asserted claims, and because a material dispute remains as to what the prior art inherently discloses, we reverse and remand.

———————————————

[*] The Honorable Ronald M. Whyte, United States District Court for the Northern District of California, sitting by designation.

## I. BACKGROUND

A.  The '826 and '875 Patents

Crown and Ball are both in the business of selling can ends and can bodies to fillers associated with major beverage companies.  "Can ends" are essentially the lids affixed to the top of beverage cans, while "can bodies" are generally cylindrical hollow containers to which the can ends are attached for filling.

The '826 and '875 patents share a common specification which identifies and discusses two ways to save metal when seaming can bodies and can ends.  The specification teaches that "improvements in metal usage can be made by increasing the slope of the chuck wall and limiting the width of the anti peaking bead." '826 patent col.1 ll.33-35.[1]  Both improvements result in significant metal savings without reducing the overall can diameter, meaning that the improvements could be run on existing machinery.

The specification first describes the invention of increasing the slope of the can end's chuck wall (also referred to as the "can end wall").  This new geometry is different from prior art Figure 2, which shows a steep can end wall that has a relatively small angle C relative to the vertical axis:

---

[1]    References are to the '826 patent unless otherwise indicated.



**FIG. 2**
**PRIOR ART**

The specification teaches that angle C in prior art can end walls is "between 12° and 20° to the vertical." *Id.* col.1 ll.21-55.

In contrast to the prior art, the specification describes a can end where the "chuck wall is inclined to axis perpendicular to the exterior of the central panel at an angle between 30° and 60°" and preferably "between 40° and 45°." *Id.* col.2 ll.9-12. The new geometry is illustrated in Figure 5 below:



Fig.5.

This change in geometry−increasing the size of angle C relative to the vertical axis to make the chuck wall less steep−reduces the use of metal in the manufacturing of the can end. *Id.* col.2 ll.1-12.

The specification also teaches that metal can be saved by "limiting the width of the anti peaking bead," preferably to a "bead narrower than 1.5mm" in radius. *Id.* col.1 ll.33-35, col.2 ll.10-11, col.4 l.19. This anti peaking bead—also known as the reinforcing bead—is the U-shaped structure shown in prior art Figure 2 around the location labeled "D." In connection therewith, the specification discusses a new seaming method employing a modified seaming chuck to avoid causing damage to the chuck or the reinforcing bead, damage which otherwise might result from the narrowing of the bead. An embodiment of the modified seaming chuck (30) is shown below in Figures 6 and 7:

## Fig.6.



## Fig.7.



In this embodiment, the can end is placed over a can body (12). Seaming rollers (34, 38) and modified chuck (30) are then applied. The modified chuck (30) has a frustoconical drive surface (32) which engages with the chuck wall (24) of the can end (22). *Id.* col.4 ll.43-46. During this seaming process, the "upper portion" of the chuck wall (24) is deformed so as to be bent upwardly around the chuck. *Id.* col.5 ll.7-12. The left-hand side of Figure 6 shows the beginning of this deformation, and the right-hand side of Figure 7 shows the final deformation after seaming is complete. The upper portion of the chuck

wall is bent upwardly so as to be substantially vertical after seaming.

As the specification explains, this modified chuck (30) does not drive deeply into the anti peaking bead (25). *Id.* col.4 ll.59-62, col.4 l.65-col.5 l.3. The specification teaches that a chuck with "a narrow annular flange" is "more likely to fracture." *Id.* col.1 ll.65-67, col.3 ll.46-47. Moreover, there "is a risk of scuffing if this annulus slips," which may leave "unsightly black marks after pasteurization." *Id.* col.1 ll.65-66, col.3 ll.49-50. To avoid these problems, the modified chuck does not drive deeply into the reinforcing bead.

The parties agree that the specification teaches that "improvements in metal usage can be made by increasing the slope of the chuck wall and limiting the width of the anti peaking bead." *Id.* col.1 ll.33-35. However, the parties disagree as to whether the written description supports an invention that improves metal usage by increasing the slope of the chuck wall without a modified chuck that does not drive deeply into the reinforcing bead.

Claim 14 is the one asserted claim of the '826 patent. All of the '826 product claims are directed to a can end before it is seamed to a can body. Claim 14 depends from claim 13 and recites a series of structural features. Both claims are set out below:

> 13. A metal can end for use in packaging beverages under pressure and adapted to be joined to a can body by a seaming process so as to form a double seam therewith using a rotatable chuck comprising first and second circumferentially extending walls, said first and second chuck walls

forming a juncture therebetween, said can end comprising;

a peripheral cover hook, said peripheral cover hook comprising a seaming panel adapted to be formed into a portion of said double seam during said seaming operation;

a central panel;

a wall extending inwardly and downwardly from said cover hook, a first portion of said wall extending from said cover hook to a first point on said wall, said first wall portion adapted to be deformed during said seaming operation so as to be bent upwardly around said juncture of said chuck walls at said first point on said wall, a second portion of said wall extending from said first point to a second point forming a lowermost end of said wall, a line extending between said first and second points being inclined to an axis perpendicular to said central panel at an angle of between 30° and 60°.

14. The end according to claim 13, further comprising an annular reinforcing bead connected to said wall at said second point, said annular reinforcing bead connecting said wall to said central panel.

*Id.* col.10 ll.37-65.

Claims 50 and 52 are the two asserted claims of the '875 patent. All of the '875 claims are directed to methods of seaming a can end. Claim 52 depends from claim 50 and both are reproduced below:

50. A method of forming a double seam between a can body and a can end intended for use in packaging a carbonated beverage, said method comprising the steps of:

a) providing a can end having a circumferentially extending peripheral cover hook, said peripheral cover hook comprising a seaming panel to be formed into a portion of said double seam during a seaming operation, an annular reinforcing bead, and a circumferentially extending wall extending from said seaming panel to said reinforcing bead, said wall and said reinforcing bead forming a transition therebetween;

b) placing said cover hook of said can end into contact with a circumferentially extending flange of a can body;

c) providing a rotatable chuck comprising first and second circumferentially extending walls, said second chuck wall depending from said first chuck wall so as to form a juncture therebetween;

d) bringing said chuck into engagement with said can end; and

e) performing said seaming operation by placing one or more seaming rolls into contact with said peripheral cover hook of said can end while said can end rotates so as to deform said seaming panel of said cover hook and to bend a portion of said can end wall upwardly around said juncture of said chuck walls at a

first location on said can end wall, a straight line extending from said first location on said can end wall to said transition between said can end wall and said reinforcing bead inclined between about 20° and about 60° with respect to said axial centerline both before and after said seaming operation.

52. The method according to claim 50, wherein said line extending from said first location to said transition is inclined between about 30° and about 50° with respect to said axial centerline of said can end both before and after performing said seaming operation.

'875 patent col.15 ll.8-50.

B.  The District Court Proceedings

Crown filed suit against Ball in 2005, shortly after the issuance of the '875 patent.  When the '826 patent issued several months later, in August 2005, Crown amended its complaint to include that patent.

The district court construed the disputed claim terms in April 2008.  On September 8, 2009, the district court granted Ball's motion for summary judgment and denied Crown's cross motion, holding that the asserted claims were invalid for violating the written description requirement.  *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 662 F.Supp. 2d 939 (S.D. Ohio 2009).  Specifically, the district court held that the asserted claims cover driving a chuck either inside or outside of the reinforcing bead, but the specification only supports driving a chuck outside of the can end's reinforcing bead.

The district court also held the asserted claims were invalid as anticipated by Japanese Patent Application No. 57-117323 by Toyo Seikan Kaisha, Ltd. ("Toyo").[2] In so finding, the district court concluded that Ball had satisfied its burden by showing that at least one embodiment of Toyo anticipated the asserted claims. The district court held that the limitation of upward bending of a can end wall was inherently disclosed by combining the unseamed can end in Toyo's claim 2 with the seamed can end in Toyo's Figure 4. The district court also found that Crown's expert, Martin Higham, did not address the anticipating embodiment referred to by Ball's expert, Dean Scranton.

Crown timely appealed. We have jurisdiction pursuant to 28 U.S.C. §1295(a)(1). The critical questions on appeal are (1) whether the specification supports the asserted claims and (2) whether the testimony of the experts raises a genuine issue of material fact as to what Toyo teaches.

## II. ANALYSIS

### A. Written Description

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, a court may grant summary judgment "when no reasonable jury could return a verdict for the nonmoving party." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* 563 F.3d 1358, 1365

---

[2] Notably, Toyo was addressed (and overcome) in one office action during the prosecution of the '826 patent and in two office actions during the prosecution of the '875 patent.

(Fed. Cir. 2009) (citations omitted).  "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party."  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) (citing *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072-73 (Fed. Cir. 2005)).  A district court's grant of summary judgment on written description is reviewed *de novo*.  *All Dental Prods LLC v. Advantage Dental Prods.*, 309 F.3d 774, 778 (Fed. Cir. 2002).

Ball argues that the common specification of the '826 and '875 patents teaches seaming and cans adapted to be seamed such that driving occurs only outside of the reinforcing bead.  As such, Ball argues that the asserted claims, which cover driving either inside or outside of the can end's reinforcing bead, violate the written description requirement.

The written description requirement is contained within 35 U.S.C. § 112, which provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The test for sufficiency of a written description is "whether the disclosure clearly 'allow[s] persons of ordinary skill in the art to recognize that [the inventor]

invented what is claimed.'" *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1355, 1562-63 (Fed. Cir. 1991)). The disclosure must "reasonably convey[ ] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* at 1351. Possession means "possession as shown in the disclosure" and "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.* Original claims are part of the specification and in many cases will satisfy the written description requirement. *Id.* at 1349. However, certain claims, such as claims to a functionally defined genus, will not satisfy the written description requirement without a disclosure showing that the applicant had invented species sufficient to support the claim. *Id.*

Crown's asserted claims are not broad genus claims or function claims simply describing the desired result of saving metal. Therefore, the critical question is whether the specification, including the original claim language, demonstrates that the applicants had possession of an embodiment that improved metal usage by increasing the slope of the chuck wall without also limiting the width of the reinforcing bead.

Crown relies on our decision in *Revolution Eyewear* for the proposition that "[i]nventors can frame their claims to address one problem or several, and the written description requirement will be satisfied as to each claim as long as the description conveys that the inventor was in possession of the invention recited in the claim." 563 F.3d at 1367. In this case, Crown contends that the specification teaches two separate solutions for improving metal usage: increasing the slope of the chuck wall of the

can end and limiting the width of the reinforcing bead. According to Crown, nothing in the specification requires employment of both methods in all instances. Where one does not elect to limit the width of the reinforcing bead, Crown contends that driving can occur either inside or outside of the reinforcing bead.

We agree with Crown that the written description supports the asserted claims. Ball contends that *Revolution Eyewear* does not apply to a specification in which the prior art problems are related to one another. According to Ball, for *Revolution Eyewear* to apply, a specification must independently present separate solutions to independent problems. Ball misstates our holding in *Revolution Eyewear*. To the contrary, we specifically held in *Revolution Eyewear* that it is a "false premise that if the problems addressed by the invention are related, then a claim addressing only one of the problems is invalid for lack of sufficient written description." 563 F.3d at 1367. Ball attempts to distinguish *Revolution Eyewear* by arguing that the specification here mandates that the prior art problems (metal usage and risk of damage with a narrower reinforcing bead) must always be solved together. But the specification specifically ties the fracturing and scuffing problems to the narrower reinforcing beads and not the increased angle of the can end wall. *See* '826 patent col.3 ll.45-50. Nowhere does the specification teach that metal savings can only be achieved by increasing the chuck wall angle along with narrowing the reinforcing bead. Tables 1-5 show pressure performance of can ends with various chuck wall angles but do not suggest that a wider chuck wall angle requires a narrower reinforcing bead. *Id.* col.5 l.29-col.8 l.3. Even more to the point, Table 6 shows that even where the reinforcing bead's width is held constant, increasing the chuck wall's slope relative to vertical brings about a savings in the

diameter of the starting material (the "cut edge"). Simply put, the specification supports the asserted claims that achieve metal savings by varying the slope of the chuck wall alone.

While the patents teach two independent ways to save metal, the advantages of limiting the chuck to driving outside the reinforcing bead only come into play when one narrows the reinforcing bead. That is when "the chuck bead becomes narrower and more likely to fracture." *Id.* col.3 ll.47-48.

Crown's original claims clearly show that the applicants recognized and were claiming an improvement in metal usage by increasing the slope of the chuck wall over that used in the prior art without any additional limitation of narrowing the width of the reinforcing bead. Notably, Crown adds the limitation requiring that there be no "driving contact between said chuck and said can end bead interior surface" in dependent claims 22 and 40 of the '875 patent. '875 patent col.12 ll.21-26, col.14 ll.31-36. The added limitation would not be needed if the inventors had in mind that in all cases driving would occur outside the reinforcing bead. These claims show, as *Ariad* recognized many original claims do, that the applicants had in mind the invention as claimed. And while Ball is correct in noting that the embodiment drawings in the specification all show chuck drive outside the reinforcing bead, that does not compel the conclusion that the written description is so narrowly tailored as to preclude Crown from claiming an embodiment that only utilizes the angled chuck wall solution. *See Lampi Corp. v. Am. Power Prods.*, 228 F.3d 1365, 1378 (Fed. Cir. 2000) (concluding that the drawings at issue were "merely a 'practical example' of the invention" and did not limit the patent to identical half-shells).

Ball also contends that increasing the slope of the can end's chuck wall necessarily requires a frustoconical drive surface which engages the chuck wall rather than the reinforcing bead. Ball's argument suggests that one of ordinary skill in the art could not seam a can end with an increased sloped chuck wall except by driving on the can end's chuck wall while avoiding contact with the reinforcing bead. But that contention implicates enablement, not written description. Indeed, Ball's argument here boils down to whether the specification "describe[s] the manner and process of making and using the invention so as to enable a person of skill in the art to make and use the full scope of the invention without undue experimentation." *LizardTech, Inc. v. Earth Res. Mapping*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005) (also noting that enablement and written description "usually rise and fall together"). However, Ball has never asserted an enablement challenge to the specification, nor does Ball claim to introduce an enablement challenge on appeal. Perhaps more importantly, there is no evidence in the record to suggest that Crown's patents are not enabled.

Ball's reliance on *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998), *LizardTech*, and *ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368 (Fed. Cir. 2008) is similarly misplaced. In each of those cases, the specification unambiguously limited the scope of the invention. In *Tronzo*, the patentee in a later-filed application asserted claims covering cup implants which were generic as to shape despite the fact that the specification only discussed conical shaped cups, characterized the conical shape as being "an extremely important aspect" of the invention, and only mentioned other shapes in specifically distinguishing the prior art as inferior. *Tronzo*, 156 F.3d at 1159. Crown's patents do warn that "[a]s can ends are developed with narrower anti peaking beads the chuck

head . . . becomes narrower and more likely to fracture." '826 patent col.3 ll.45-50. The '875 patent includes claims addressing this problem (*see* '875 patent col.12 ll.21-26, col.14 ll.31-37) but nowhere suggests that saving metal by increasing the slope of a can end's chuck wall necessarily requires that there be no driving contact with the interior of the reinforcing bead. The problems the patents address are related, but they are still separate, and solving one does not necessarily require solving the other.

In *LizardTech*, the claims at issue were invalidated on both written description and enablement grounds because the specification disclosed only one specific method for solving one particular problem—creating "seamless" discrete wavelet transforms for use in electronic image data compression. 424 F.3d at 1345. In contrast, Crown's patents identify at least two ways of solving the problem of metal usage.

Finally, in *ICU Medical*, the specification at issue was clear that having a spike within the medical valve was necessary to the use of the claimed invention. 558 F.3d at 1378-79. Again, Crown makes no such narrow disclosure here. In fact, the specification in this case clearly shows a chuck entering the reinforcing bead in the prior art (Figure 2). It is only when one elects to narrow the reinforcing bead that the location of chuck drive becomes an issue.

The district court also failed to distinguish in its written description analysis between Crown's only asserted product claim, Claim 14 of the '875 patent, and Crown's method claims, Claims 50 and 52. Claim 14 covers a metal can end with certain features. The district court found the written description deficient because it failed to include a negative limitation requiring that, during the

process of seaming the can end to the can body, a chuck not drive in the can end's reinforcing bead. Claim 14, as a product claim, however, recites structural limitations as opposed to method steps. In fact, the PTO specifically required the inventors to file a divisional application and separate the method and product claims. A "patentee need only describe the product as claimed, and need not describe an unclaimed method of making the claimed product." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1331-33 (Fed. Cir. 2003). The district court, therefore, erred in holding that there was an inadequate written description supporting claim 14.

In sum, we hold that the district court erred in holding that the asserted claims violated the written description requirement. Therefore, we reverse and enter judgment for Crown on its cross-motion. *See PowerOasis*, 522 F.3d at 1307 (Fed. Cir. 2008) (noting that compliance with the written description requirement is subject to summary judgment if no reasonable fact finder could return a verdict for the non-moving party).

B. Anticipation

Crown also contends that the district court erred in finding that Toyo anticipates the asserted claims. The parties disagree as to whether Toyo inherently discloses the upward bending of a can end wall (or chuck wall).

We review *de novo* grants of summary judgment based on § 102 anticipation. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001). To challenge the patent, Ball must prove by clear and convincing evidence that Toyo discloses, either expressly or inherently, every limitation as asserted in the claims: "To anticipate a claim, a single prior art reference must

expressly or inherently disclose each claim limitation . . . . But disclosure of each element is not quite enough−this court has long held that '[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim*.'" *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334-35 (Fed. Cir. 2008) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542,1548 (Fed. Cir. 1983)). Moreover, inherent anticipation requires more than mere probabilistic inherency, *see Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991), and more than the presence of an unrecognized *de minimis* quantity of claimed substance in the prior art. *See In re Seaborg*, 328 F.2d 996 (CCPA 1964). But these cases "do not show that inherency requires recognition" of the inherent element. *See Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).

Ball contends that the district court correctly determined that Toyo disclosed more than one unseamed end and that Ball need only demonstrate that a single embodiment of Toyo anticipates the asserted claims in order for it to be entitled to summary judgment on the basis of anticipation. *Athrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1372 (Fed. Cir. 2005) (noting that "it was error for the district court to limit the disclosure of the prior art reference to a preferred embodiment"). However, Mr. Scranton (Ball's expert) and Mr. Higham (Crown's expert) dispute whether *any* embodiment exists that anticipates the asserted claims. Ball contends that Mr. Higham addressed only Toyo's claim 1 embodiment while Mr. Scranton focused on Toyo's claim 2. Mr. Higham's report is not as narrow as Ball contends. While Mr. Higham did not mention Toyo's claim 2 embodiment specifically, he did not need to because he offered an opinion on the category of can ends relevant to Toyo as a

whole. Nowhere did Mr. Higham limit his opinion to any particular embodiments. According to Mr. Higham's opinion, any unseamed can end taught in Toyo would require a portion of the end wall to be bent upwardly during seaming—including the can end in Toyo's claim 2—and therefore could not have been used to arrive at the seamed end depicted in Toyo's Figure 4. Mr. Higham explains that it would have been impossible to bend a portion of the can end wall upwardly around a chuck juncture during seaming to a can body that had not been subjected to a necking step. According to Mr. Higham, this "neck" is created when the diameter at the top of the can body is reduced relative to the diameter of the main body. Toyo's Figure 4, however, does not show a can body with a neck.

Simply put, Mr. Scranton opined that, to arrive at the seamed can end shown in Toyo's Figure 4, the unseamed end of claim 2 must necessarily have been bent upwardly around an inherent chuck by more than 10 degrees. In contrast, Mr. Higham opined that one could never arrive at Figure 4's seamed end if starting with an unseamed end that would require upward bending during seaming, because that would necessitate a necked can contrary to the one depicted in Figure 4. At bottom, Mr. Higham's opinion suggests that Toyo does not inherently disclose each limitation of the asserted claims.

Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1578 (Fed. Cir. 1991) ("To the extent that apparent inconsistencies among the [expert's] three declarations raise questions of credibility and weight . . . they were improperly resolved on summary judgment.").

Ball's various arguments regarding Mr. Higham's change in position during the prosecution and throughout the course of this litigation are proper matters for a jury to weigh in making a credibility determination. Accordingly, we reverse the district court's holding with respect to anticipation and remand for trial.

## C. Obviousness

Because the issue of obviousness has not been finally resolved by the district court, we decline to address Ball's assertion of that defense. *See MIT v. Abacus*, 462 F.3d 1344, 1359 (Fed. Cir. 2006) ("To the extent that we have jurisdiction to consider the marking statute issues, we decline to address them because those questions have not been finally resolved by the district court.").

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's entry of summary judgment with respect to written description and instead enter judgment for Crown. We reverse and remand for trial with respect to the district court's grant of summary judgment on anticipation.

### REVERSED AND REMANDED

#### COSTS

Costs are awarded to Crown.

# United States Court of Appeals
# for the Federal Circuit

---

**CROWN PACKAGING TECHNOLOGY, INC.**
**AND CROWN CORK & SEAL USA, INC.,**
*Plaintiffs–Appellants,*

**v.**

**BALL METAL BEVERAGE CONTAINER**
**CORPORATION,**
*Defendant–Appellee.*

---

2010-1020

---

Appeal from the United States District Court for the Southern District of Ohio in Case No. 3:05-CV-281, Judge Walter H. Rice.

---

DYK, *Circuit Judge,* concurring-in-part and dissenting-in-part.

I join Parts I, IIB, and IIC of the majority opinion. However, I respectfully dissent from Part IIA. In my view, method claims 50 and 52 of the '875 patent and product claim 14 of the '826 patent are invalid for failure to satisfy the written description requirement.

I agree with the majority that the '875 and '826 patents are directed to solving two problems: (1) reducing metal usage, and (2) reducing scuffing to the can end wall.

The metal usage problem is solved by "increasing the slope of the chuck wall and limiting the width of the anti-peaking bead." '875 Patent col.1 ll.33–34. The scuffing problem is solved by designing a chuck that drives only outside, and not inside, of the new, narrower anti-peaking bead ("bead"). *See id.* col.4 ll.44–47 ("The chuck . . . is designed to enter the chuck wall without scratching or scuffing a coating on the can end; not to drive on the concave bead surface as shown [in the prior art].").

Claim 50, from which claim 52 depends, addresses only the metal usage problem by increasing the slope of the chuck wall. It provides in relevant part:

> performing said seaming operation by placing one or more seaming rolls into contact with said peripheral cover hook . . . while said can end rotates so as . . . to bend a portion of said can end wall upwardly around said juncture of said chuck walls at a first location on said can end wall, a straight line extending from said first location on said can end wall to said transition between said can end wall and said reinforcing bead inclined between about 20° and about 60° with respect to said axial centerline both before and after said seaming operation.

*Id.* col.15 ll.30–41. Thus, claim 50 discloses an embodiment in which a can end wall having an increased slope can be combined with the wider, prior art bead, and it is not limited to driving the chuck outside the bead. The question, then, is whether this embodiment is disclosed in the specification and whether claims 50 and 52 can satisfy the written description requirement.

Relying on *Revolution Eyewear*, the majority holds that the claims are valid. However, *Revolution Eyewear*, in holding that a claim may address only one of the purposes disclosed in the specification, still requires explicit disclosure of the embodiments in the claims: "Inventors can frame their claims to address one problem or several, and the written description requirement will be satisfied as to each claim *as long as the description conveys that the inventor was in possession of the invention recited in that claim.*" *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1367 (Fed. Cir. 2009) (emphasis added). Therefore, the claims, whether directed to solving a single problem or multiple problems, must still be grounded in the specification.

There is no question that the specification does not teach combining the sloped can end wall together with the wider, prior art bead and driving the chuck into the bead instead of the sloped can end wall. That combination is a new and distinct invention, and our written description jurisprudence requires that it be described in the specification. The fact that the claims are broad enough to cover such an invention or imply that the claims cover such an invention is not sufficient when the invention itself is not described either in the claims or elsewhere in the specification. The failure of the specification to describe the invention requires invalidation of claims 50 and 52.

Similarly, product claim 14, which depends from claim 13, discloses a can end wall having an increased slope in combination with a wider, prior art bead. Because this combination is a separate invention not disclosed in the specification, claim 14 is also invalid for failure to satisfy the written description.

Under our written description precedent, failure to disclose a claimed invention is fatal to a claim's validity. In *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010), we held that "the hallmark of written description is disclosure." "[I]f the claimed invention does not appear in the specification, . . . the claim . . . fails regardless [of] whether one of skill in the art could make or use the claimed invention." *Id.* at 1348. The specification must convey with "reasonable clarity" to those of skill in the art that the inventor was in possession of the claimed invention as of the filing date of the patent application. *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991).

For these reasons, I would affirm summary judgment that product claim 14 of the '826 patent and method claims 50 and 52 of the '875 patent are invalid for failure to comply with the written description requirement.