# United States Court of Appeals for the Federal Circuit

---

**SCRIPTPRO LLC, SCRIPTPRO USA, INC.,**
*Plaintiffs-Appellants*

**v.**

**INNOVATION ASSOCIATES, INC.,**
*Defendant-Appellee*

---

2015-1565

---

Appeal from the United States District Court for the District of Kansas in No. 2:06-cv-02468-CM, Judge Carlos Murguia.

---

Decided: August 15, 2016

---

TRAVIS W. MCCALLON, Lathrop & Gage, LLP, Kansas City, MO, argued for plaintiffs-appellants. Also represented by ROBERT CAMERON GARRISON; R. SCOTT BEELER, Overland Park, KS.

ANGELA DAWN MITCHELL, Shook, Hardy & Bacon, LLP, Kansas City, MO, argued for defendant-appellee. Also represented by BASIL TRENT WEBB.

---

Before MOORE, TARANTO, and HUGHES, *Circuit Judges.*

MOORE, *Circuit Judge*.

ScriptPro, LLC and ScriptPro USA, Inc. (collectively "ScriptPro") appeal the United States District Court for the District of Kansas's grant of summary judgment that claims 1, 2, 4, and 8 ("asserted claims") of U.S. Patent No. 6,910,601 are invalid for lack of written description. We reverse and remand for further proceedings.

BACKGROUND

The '601 patent is directed to a "collating unit" used with a control center and an automatic dispensing system ("ADS") to store prescription containers after a medication has been dispensed into the containers. At issue in this appeal is whether the '601 patent's specification limits the invention to a collating unit that sorts and stores prescription containers by patient-identifying information and slot availability. In the decision appealed from, the district court determined that the specification was limiting and that the asserted claims, which are not so limited, are invalid for lack of written description.

The '601 patent explains that the claimed invention "provides a distinct advance in the art of automated storage units for use with static control centers cooperating with [ADSs]." '601 patent, 4:15–17. Specifically, it notes that the claimed collating units "may be used with an existing static control center to automatically store prescription containers" and that such storage occurs "according to a storage algorithm that is dependent on a patient name for whom a container is intended and an availability of an open storage position in the collating unit." *Id.* at 4:19–25. It explains that, "[i]n operation, a prescription for a patient is entered into the control system of the ADS along with identifying information for the prescription, such as the patient's name." *Id.* at 5:40–42. After the ADS dispenses the medication, the filled

prescription container is transported to the collating unit, where the control system determines where to store the container by taking into account "whether previous containers for the patient have been stored in the collating unit and not yet retrieved," *id.* at 5:47–49, and "if the holding area is full," *id.* at 5:54–59. When an operator wishes to retrieve a patient's filled prescriptions, "the operator may input the identifying information for the prescription, such as the patient's name, into the control system," which can then indicate the holding area for that patient's prescriptions. *Id.* at 6:11–20. The '601 patent identifies a number of advantages of the claimed collating unit, including the unit's ability to automatically store containers, eliminate errors associated with manual retrieval and storage of containers, hold more than one container in a holding area, store containers based on a patient's name, store multiple containers for a patient together in the same area, and decrease operating costs for pharmacies by eliminating the need for multiple operators to retrieve and store containers. *Id.* at 6:21–45.

The parties agree that claim 8 is representative of the asserted claims. This claim recites:

> 8. A collating unit for automatically storing prescription containers dispensed by an automatic dispensing system, the collating unit comprising:
>
> > an infeed conveyor for transporting the containers from the automatic dispensing system to the collating unit;
> >
> > a collating unit conveyor positioned generally adjacent to the infeed conveyor;
> >
> > a frame substantially surrounding and covering the infeed conveyor and the collating unit conveyor;
> >
> > a plurality of holding areas formed within the frame for holding the containers;

> a plurality of guide arms mounted between the infeed conveyor and the collating unit conveyor and operable to maneuver the containers from the infeed conveyor into the plurality of holding areas; and

> a control system for controlling operation of the infeed conveyor, the collating unit conveyor, and the plurality of guide arms.

ScriptPro sued Innovation Associates, Inc. ("Innovation") for patent infringement in 2006.[1] This is the second appeal addressing whether the asserted claims of the '601 patent are invalid for lack of written description. In the first appeal, we reversed the district court's grant of summary judgment that the asserted claims are invalid for lack of written description. *ScriptPro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1356 (Fed. Cir. 2014) (*"ScriptPro I"*). The district court had erroneously determined that the specification limits the invention to a collating unit that requires use of sensors to determine whether a holding unit is full. We explained that "[t]here is no sufficiently clear language in the specification that limits the invention to a collating unit with the (slot-checking) sensors," *id.* at 1359, and that other language in the specification "positively suggests that slot sensors are an optional, though desirable, feature of the contemplated collating unit," *id.* at 1360. We also explained that the original claims that were filed as part of the application

---

[1] After ScriptPro filed suit, Innovation petitioned for, and the United States Patent and Trademark Office ("PTO") instituted, inter partes reexamination. During reexamination ScriptPro amended the asserted claims, adding language to claims 1 and 2, and rewriting claim 4 into independent format. Claim 8 was not amended. The PTO confirmed the asserted claims as amended. These changes do not impact the issues in this appeal.

for the '601 patent did not require sensors. We stated that these original claims, which are part of the specification and can provide written description support for later issued claims, further support reading the specification as describing sensors as optional. *Id.* at 1361. Although not at issue in the first appeal, we noted that it was "not immediately apparent" whether any claim language required tracking which slots are open and what slots are being used for a particular customer. *Id.* at 1359.

On remand, Innovation moved again for summary judgment that the asserted claims are invalid for lack of written description. This time Innovation argued that the specification "unambiguously limits the manner in which the collating unit achieves automated storage of prescription containers . . . based on the availability of an open storage position and patient-identifying information" but the asserted claims "broadly claim a collating unit for 'automatically storing' absent any limitation that makes [them] commensurate with the invention" as described in the specification. J.A. 5191–92. In response, ScriptPro argued that the specification describes associating stored containers with a specific patient as one, but not the only, goal of the '601 patent, such that the specification does not limit the claimed invention to sorting and storing based on patient-identifying information.

The district court granted Innovation's motion. It quoted our concern expressed in *ScriptPro I*, and, citing *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1988) and *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368 (Fed. Cir. 2009), it concluded that the asserted claims are invalid for lack of written description. *ScriptPro LLC v. Innovation Assocs., Inc.*, 96 F. Supp. 3d 1201, 1205–07 (D. Kan. 2015) ("*ScriptPro II*"). The district court explained that the specification describes the collating unit as using an algorithm based on patient names and availability of open slots to store containers and that "one of [the patent's] central purposes

is to collate and store prescriptions by patient." *Id.* at 1206 (citing '601 patent, 4:21–25). It determined that the claims are broader than the description because they "do not limit the ways in which the prescription containers are stored" such that no reasonable jury could find the written description requirement met. It concluded that, "[w]ithout including a limitation to address the storage by patient name, the claims are simply too broad to be valid." *Id.* at 1207. ScriptPro appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

"A district court's grant of summary judgment of invalidity for lack of written description is reviewed de novo." *Atl. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011). "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the nonmoving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). In determining whether the written description requirement is met, we consider "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

In this appeal, ScriptPro argues that the district court erred by interpreting the '601 patent's specification as limited to sorting by patient-identifying information. The problem, according to ScriptPro, is that the district court's focus on one purpose of the '601 patent—to "keep[] track of slot use by particular customers and slot availability," *ScriptPro II*, 96 F. Supp. 3d at 1207—caused it to erroneously conclude that the '601 patent's invention is limited to a collating unit that "achiev[es] the singular purpose of storing prescription containers" by patient-identifying

information, specifically by patient name. Appellant's Br. 23. According to ScriptPro, only if the specification is read to limit the claimed invention to sorting and storing prescription containers by patient-identifying information can the asserted claims be "too broad" for failing to include such a limitation. ScriptPro argues that the specification does not limit the invention in this manner.

We agree with ScriptPro that the specification does not limit the claimed invention to sorting and storing prescription containers by patient-identifying information. The '601 patent discloses multiple problems that the invention solves, including working with existing ADSs, "stor[ing] more than one container in a holding area," "collat[ing] multiple containers for a patient in one holding area," "stor[ing] a container for a patient based on the patient's name, as opposed to a prescription number associated with the patient," and grouping together "multiple prescriptions for a patient, whether in the form of prescription vials, unit-of-use packages, or a combination thereof" for easy retrieval. '601 patent, 3:59–4:9; *see id.* at 6:21–45. And while some, indeed many, of these solved problems involve sorting prescription containers by patient-identifying information, not all of them do. For example, storing more than one prescription container in a holding area does not necessarily require that all the containers in that holding area be for the same patient. The prescription containers could be sorted into different holding areas based on the medicament dispensed (e.g., sorting all containers for a specific antibiotic into the same holding area, regardless of the patient for whom it is prescribed), by the date the prescription was filled, or some other sorting scheme. In fact, the '601 patent expressly states that containers can be sorted and stored "by patient, prescription, *or other predetermined storage scheme* without input or handling by the operator." '601 patent, 8:21–24 (emphasis added).

Consistent with this express disclosure, the original claims filed as part of the application from which the '601 patent issued were not limited to sorting and storing prescription containers by patient-identifying information. Rather, these original claims, like the asserted claims, recite a collating unit that automatically stores prescription containers dispensed by an ADS. As we have explained, "[o]riginal claims are part of the specification and in many cases will satisfy the written description requirement." *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1380 (Fed. Cir. 2011) (citing *Ariad Pharm.*, 598 F.3d at 1349).

It is true, as Innovation argues, that much of the '601 patent's specification focuses on embodiments employing a sorting and storage scheme based on patient-identifying information. *See, e.g.*, '601 patent, 4:21–25 ("[t]he unit stores prescription containers according to a storage algorithm that is dependent on a patient name for whom a container is intended"), 5:40–47 ("a prescription for a patient is entered into the control system of the ADS along with identifying information for the prescription, such as the patient name . . . [t]he control system next determines in which holding area to store the container"), 6:36–37 ("[t]he collating unit is also operable to associate a stored container with a patient based on the patient's name"). And it is also true that the specification explains that prior art automated control centers that store containers "based on a prescription number associated with the container, as opposed to storing the container based on a patient name" are "especially inconvenient for several reasons." '601 patent, 3:6–11. But a specification's focus on one particular embodiment or purpose cannot limit the described invention where that specification expressly contemplates other embodiments or purposes. This is especially true in cases such as this, where the originally filed claims are not limited to the embodiment or purpose that is the focus of the specification. Similarly,

mere recognition in the specification that an aspect of a prior art system is "inconvenient" does not constitute "disparagement" sufficient to limit the described invention—especially where the same specification expressly contemplates that some embodiments of the described invention incorporate the "inconvenient" aspect.

The '601 patent's express disclosure that sorting and storing can be done in a number of ways distinguishes this case from *Gentry Gallery* and *ICU Medical*. In those cases, the specifications clearly limited the scope of the inventions in ways that the claims clearly did not. *Gentry Gallery*, 134 F.3d at 1479 ("the original disclosure clearly identifies the console as the only possible location for the controls" and the claims did not limit the location of the controls); *ICU Med.*, 558 F.3d at 1378 ("the specification describes only medical valves with spikes" and the claims did not include a spike limitation). Such is not the case here. The '601 specification does not limit the sorting and storing of prescription containers by patient-identifying information alone—any "predetermined storage scheme" will do. '601 patent, 8:21–24. And, as explained above, the '601 patent's specification does not identify the single purpose for the described invention as sorting and storing prescription containers by patient-identifying information. Multiple purposes are described, including storing multiple prescription containers together according to some storage scheme and creating a collating unit that is easy to install with existing ADSs. It is certainly reasonable that different claims could be directed to covering these different aspects of the invention. Not every claim must contain every limitation or achieve every disclosed purpose. Here, the original claims filed as part of the application for the '601 patent did not include a requirement that sorting and storing be done by use of patient-identifying information. The district court erred when it determined that the specification limited the invention to storing prescription containers based on

patient name and slot availability. Because the specification does not limit the scope of the invention in the manner the district court described, the asserted claims are not invalid for lacking such a limitation.[2]

## CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment that the asserted claims are invalid for lack of written description and remand the case for further proceedings.[3]

## **REVERSED AND REMANDED**

### COSTS

Costs to ScriptPro.

---

[2] Because we determine that the district court erred in its conclusion that the invention disclosed in the specification was limited to sorting and storing prescription containers by patient name and slot availability, we need not reach ScriptPro's alternative argument that "collating unit" should be construed to require patient-specific collation.

[3] Though we see no triable issue of fact here, the patentee did not move for summary judgment on this issue before the district court. Thus, we remand this case to the district court which is best situated to determine how to move forward.